**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **United States of America** | : | |
| | : | |
| **v.** | : | **No. 3:02-cr-236 (VLB)** |
| | : | |
| **Anthony Sabato,** | : | |
| | : | **March 4, 2021** |
| | : | |

## ORDER AND DECISION GRANTING THE GOVERNMENT'S MOTION FOR TURNOVER, DKT. 37

Before the Court is the Government's Motion for Turnover Order.  Dkt. 37.
The Government moves for an order requiring the BOP to turnover $2,805.61 or all
funds in Mr. Sabato's inmate trust account except for $450 pursuant to 18 U.S.C. §
3664(n).  Mr. Sabato has filed a response asserting that he has joined the BOP's
Inmate Financial Responsibility Program (IFRP), which structures repayment of
criminal monetary penalties, and that he is not in default under that program.  Dkt.
40.  Further, Mr. Sabato asserts that his trust account has already been seized prior
to him receiving notice and argues this constitutes a violation of his due process
rights.  The Court ordered the Government to supplement its briefing to (1) address
whether Mr. Sabato was in default and (2) whether the funds were the product of
gradual accumulation of prison wages or a windful/sudden financial injection.  Dkt.
39.  The Government filed a supplemental motion asserting that Mr. Sabato is in
default and most of the funds were the product of third-party contributions and not
prison wages.  Dkt. 41.  For the following reasons, the Court grants the motion for
turnover and orders the BOP to turnover all funds held in Mr. Sabato's inmate trust

account to the Clerk of Court as payment toward Mr. Sabato's fine, except for $450.00 to be maintained in Mr. Sabato's account for his benefit.

I.     BACKGROUND

On July 17, 2003, Mr. Sabato was sentenced to serve 48 months of imprisonment, with three years of supervised release to follow.  Dkt. 26.  In addition, Mr. Sabato was ordered to pay a $100 Special Assessment fee and a fine of $10,000. *Id.*  Mr. Sabato has been reincarcerated on a 2015 conviction that was also before this Court.  *See United State v. Sabato*, 3:15CR52.  He is currently serving a 165-month period of incarceration for the 2015 conviction.  *Id.*

On February 5, 2021, the Government filed a motion for turnover of funds in Mr. Sabato's inmate trust account indicating the Mr. Sabato had substantial resources in his account that could be paid towards his outstanding fine due in the 2002 case.  Dkt. 37.  The Government thereafter filed accounting documents showing that Mr. Sabato's current liability for the fine ordered in the underlying case is $8,358.69.  Dkt. 43.  Since the imposition of the fine, there were periods of time when Mr. Sabato made payments somewhat consistently, and there are other periods of time where he failed to pay anything towards this liability for many years. *Id.*  In the last 12 months, he has paid approximately $300 towards the outstanding liability. *Id.*

The Government also provided an accounting of Mr. Sabato's inmate trust account showing that over the last 12 months he has received third party deposits from Western Union ranging from $50 to $300 on a somewhat monthly basis totaling $3,350 in the last 12 months.  Dkt. 43-3.  These records also reflect that Mr.

Sabato has earned $761.58 through prisoner wages during this same period.  *Id.*  Mr. Sabato's last six months of withdrawals have totaled just under $600.  *Id.*  As of February 17, 2021, Mr. Sabato has an account balance of $4,249.55.  *Id.*

The Defendant's response indicates that he joined the BOP's Inmate Financial Responsibility Program (IFRP) and agreed to pay $25.00 quarterly.  Dkt. 40.  He attached an unexecuted agreement to his response that provides that the first payment under the agreement is to be made in March 2021, but the agreement does not provide for turnover of the significant funds in Mr. Sabato's inmate trust account to provide for payments missed.

## II.    LEGAL STANDARD

Title 18 of the United States Code, section 3613 states that "[t]he United States may enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law and State law."  "A person sentenced to pay a fine or other monetary penalty, including restitution, shall make such payment immediately, unless, in the interest of justice, the court provides for payment on a date certain or in installments."  § 3572(d)(1).  Section 3664(n) further provides that "[i]f a person obligated to provide restitution, or pay a fine, receives substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration, such persons shall be required to apply the value of such resources to any restitution or fine still owed."

There are very few cases in this circuit addressing § 3664(n).  The Second Circuit mentioned this section in its decision in *United States v. Kinlock*, 174 F.3d

3

297, 301–02 n.3 (2d Cir. 1999).  The Second Circuit merely mentioned this section for the proposition that a defendant is not excused from paying restitution in the event of a future ability to do so.  *Id.*  The facts of *Kinlock* did not require application of § 3664(n).   At least one district court in this circuit that has applied § 3664(n) have granted motions when the Government shows that the defendant received "substantial resources."  *United State v. Alexander*, No. No. 3:16cr73(JBA), 2020 WL 1698660 (D. Conn. Apr. 8, 2020) (the BOP held $5,550.62 in the defendant's inmate trust account).

However, at least one court in this circuit has come out against the Government on a similar motion.  *United States v. Hickman*, 330 F. Supp. 3d 921 (W.D.N.Y. 2018).  In *Hickman*, the Government requested the turnover of funds within the defendants BOP trust account to go towards the defendant's fine imposed in the underlying criminal action.  There, the court held that in order for the court to issue an order to seize funds from a defendant's trust account to pay an outstanding fine, "the Court must first conclude that [the d]efendant has defaulted on his payment obligation."  *Id.* at 924.

There are some cases outside of this circuit that are instructive.  Such as *United States v. Rand*, 924 F.3d 140 (5th Cir. 2019), where the Fifth Circuit affirmed a turnover order of the Defendants BOP trust account funds finding that $1,684.57 constitutes "substantial resources" for the purpose of § 3664(n).  The Fifth Circuit cited to § 3572(d)(1), which provides that fines, restitution, and other monetary penalties are due immediately unless the court provides otherwise.  *Id.* at 143.  *See also United States v. Kobe*, No. 2:09-cr-5-NR, 2020 WL 1929256, at *4 (W.D. Pa. Apr.

4

21, 2020) (finding that $5,915.07 constitutes "substantial resources" and collecting other cases with substantial resource findings ranging between $1,684.57 to $5,931.40).

In *United States v. Hughes*, 914 F.3d 947 (5th Cir. 2019) *as revised* (Feb. 1, 2019), *as revised* (Feb. 14, 2019), the Fifth Circuit reversed a turnover order finding that the accumulated funds of $3,464.85 were largely prison wages and do not fall within § 3664(n).  The court held that "[w]e do not think the gradual accumulation of prison wages constitutes "substantial resources" such that it fits within § 3664(n)'s ambit; rather we think this provision refers to windfalls or sudden financial injections."  *Id.* at 951.  The conclusion that § 3664(n) does not include prison wages was also cited to and applied in *United States v. Poff*, 781 Fed. Appx. 593, 595 (9th Cir. 2019).

III.   ANALYSIS

The Court finds that Mr. Sabato is in default.  The underlying fine was imposed in 2003.  In the last eighteen years, in which he served his custodial sentence and term of supervised release, he as only brought the fine down from $10,000 to $8,358.69.  There were years where Mr. Sabato paid nothing towards this fine; such as in 2005, 2011, 2013 to 2015, and 2017 to 2019.  The balance of his 2003 fine is due and in default.

The Court finds that the funds in Mr. Sabato's account constitute "substantial resources."  As of February 17, 2021, he has over $4,000 in his inmate trust account.  While some of these funds came from his wages, the vast majority of the funds came from a third-party who has repeatedly provided Mr. Sabato with

the means of paying the debt Mr. Sabato owes.  This influx of money, which is well more than Mr. Sabato has used in the last six months, is a windfall.  Section 3664(n) provides that such windfalls should be applied toward outstanding balances due and owing.  Had Mr. Sabato been released, the Government could exercise its right to the civil judgment against Mr. Sabato by garnishing his wages and/or levying his bank account to recover the judgment.  Fairness and § 3664(n) do not allow Mr. Sabato to enjoy substantial financial resources while remaining in default simply because he is incarcerated.

The Court rejects Mr. Sabato's objection to the seizure of funds pursuant to due process.  The Government has not seized any funds, rather they have been placed in hold until this Court could adjudicate the pending motion.   The inmate trust account is just that a trust account, which is controlled by the BOP and can be encumbered at the Warden's discretion.  *See Trust Fund/Deposit Fund Manual*, Federal Bureau of Prisons at § 8.8 (Apr. 9, 2015), http://www.bop.gov/policy/progstat/4500_011.pdf.

IV.    CONCLUSION

For the aforementioned reasons, the Court grants the motion for turnover and orders the BOP to turnover all funds held in Mr. Sabato's inmate trust account to the Clerk of Court as payment toward Mr. Sabato's fine, except for $450.00 to be maintained in Mr. Sabato's account for his benefit.

**IT IS SO ORDERED.**

**_____/s/_____**
**Hon. Vanessa L. Bryant**
**United States District Judge**

**Dated this day in Hartford, Connecticut: March 4, 2021**